MCCARTNEY V. MAY

NO. 07-00-0034-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

JUNE 7, 2001

______________________________

DAVID L. MCCARTNEY, M.D., DARRYL M.

WILLIAMS, M.D., AND DORMA KOHLER, APPELLANTS

V.

DONALD R. MAY, M.D., APPELLEE

_________________________________

FROM THE 140
TH
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 95-550,816; HONORABLE JIM B. DARNELL, JUDGE

_______________________________

Before BOYD, C.J., REAVIS, J., and DICKENSON, SJ.
(footnote: 1)
 Appellants David L. McCartney, M.D., Darryl Williams, M.D., and Dorma Kohler bring this appeal from the denial of summary judgment in a suit brought by appellee Donald R. May, M.D.  This interlocutory appeal presents questions as to sovereign immunity, official immunity, and qualified immunity.  For reasons we later recount, we affirm in part and reverse and remand in part. 

This interlocutory appeal is authorized by Texas Civil Practice and Remedies Code section 51.014(5) (Vernon Supp. 2001), which permits such appeals from denial of a motion for summary judgment based upon claims of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. 

BACKGROUND

Dr. May was hired as a tenured professor and chairman of the Department of Ophthalmology at the Texas Tech Health Sciences Center in September 1989.  He served in that position until April 7, 1994, when Darryl Williams, Dean of the medical school, removed May as chair of the department and offered him a six-month position as  Associate Dean for Special Projects.  Williams’s letter stated the action did not affect May’s status as a tenured professor, but the new position included no clinical responsibilities.  Dr. McCartney was subsequently selected to replace May as chair of the department.

May filed suit on March 31, 1995, asserting claims for defamation, self-defamation, intentional interference with contract, intentional interference with prospective contractual relations, intentional infliction of emotional distress, substantive due process violations under 42 U.S.C. § 1983, procedural due process violations under 42 U.S.C. § 1983, and due course of law violations under article 1, section 19 of the Texas state constitution.  The claims were asserted against Bernard T. Mittemeyer, M.D., Donald Haragan, Ph.D., David McCartney, M.D., Darryl M. Williams, M.D., and Dorma Kohler.

May included Dr. Mittemeyer, then Dean of the Texas Tech University Health Sciences Center, as a party for the purpose of seeking injunctive relief under 42 U.S.C. § 1983, the Due Process Clause of the fourteenth amendment to the federal constitution and article 1, section 19 of the Texas constitution.  In his second amended original petition, May substituted Dr. Joel Kupersmith as a party defendant in place of Mittemeyer because he had succeeded Mittemeyer as Dean of the Texas Tech University Health Sciences Center School of Medicine (TTUHSC).  In the same petition, May also substituted Dr. David R. Smith for Dr. Donald Haragan because he had succeeded Dr. Haragan as President of Texas Tech University and TTUHSC.   

After two attempts to remove the case to federal court, a defense motion for summary judgment on which the trial court took no action, and two prior motions for summary judgment, the defendants filed an additional motion for summary judgment in September 1999.  The grounds asserted in this motion were that there was no evidence supporting May’s claims and the claims were barred by the doctrines of sovereign immunity, official immunity, and qualified immunity.  The trial court disposed of that motion by sustaining Drs. Smith and Kupersmith’s claims of sovereign immunity and dismissed them from the case.  It also granted summary judgment in favor of the remaining defendants McCartney, Williams and Kohler, on May’s claim for intentional interference with contract, denied the motion as to his remaining claims against appellants in their individual and official capacities for defamation, self-defamation, and intentional interference with prospective contractual relations.  It also expressly overruled appellants’ assertion of affirmative defenses to May’s claims under 42 U.S.C. § 1983.  Unaddressed in the court’s order were May’s claims for intentional infliction of emotional distress and violation of due course of law.  Denial of summary judgment on those claims is implicit in the court’s order.  Hence, this appeal by appellants as the remaining defendants.  

In mounting their challenges, appellants present four issues for our determination.  They are: 1) whether May’s tort claims against them in their official capacities should be dismissed because they are entitled to sovereign immunity; 2) whether May’s intentional tort claims against appellants in their individual capacities should be dismissed because May did not overcome their entitlement to official immunity; 3) whether May’s due process claims under 42 U.S.C. § 1983 for monetary damages against appellants in their official capacities should be dismissed because they are entitled to sovereign immunity; and 4) whether May’s due process claims under 42 U.S.C. § 1983 against appellants in their individual capacities should be dismissed because May did not overcome their entitlement to qualified immunity.

DISCUSSION

Initially, May contends that we lack jurisdiction over this appeal.  He argues that the issues asserted in appellants’ third motion for summary judgment were considered and rejected by the trial court on January 20, 1998.  Because they did not take a timely appeal from that denial, he posits that this appeal is untimely and we have no jurisdiction to consider it.  In advancing that argument, May places primary reliance upon the court’s decision in 
Cameron County v. Carrillo
, 7 S.W.3d 706, 708-09 (Tex.App.--Corpus Christi 1999, no pet.).  However, Texas Rule of Civil Procedure 166a does not limit the number of times a motion for summary judgment may be filed.  Tex. R. Civ. P. 166a.  The general rule is that denial of a summary judgment is interlocutory and is in no way final.  
De Los Santos v. S.W. Texas Methodist. Hosp.,
 802 S.W.2d 749 (Tex.App.--San Antonio 1990, no pet.), 
overruled on other grounds
, 
Lewis v. Blake
, 876 S.W.2d 314 (Tex. 1994)
.  
Because that is the case, a motion for summary judgment may be reurged in the district court after its denial.  
Villages of Greenbriar v. Torres
, 874 S.W.2d 259, 262 (Tex.App.--Houston [1
st
 Dist.] 1994, pet. denied).  The portion of the 
Carrillo
 opinion on which May apparently relies is that in which the court refers to a “renewed” motion for summary judgment as a successive motion for new trial and not a motion for rehearing “because it contains different grounds for summary judgment than did the earlier motion.”  
Carrillo, 
7 S.W.3d at 709.  If there be an implication in that comment that a summary judgment motion may not be reurged in district court, we would disagree.  Because of its interlocutory nature, a trial court continues to have the right to reconsider an earlier disposition. The mere fact that the statute does permit the appeal of a summary judgment motion such as the one before us, does not mean that the absence of an appeal from an earlier motion deprives the later ruling of its interlocutory nature or of the right to appeal a later ruling.  

It is well established that a defendant moving for summary judgment on an affirmative defense must conclusively establish all elements of that defense.  A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence.  
City of Palestine v. Ramirez
, 925 S.W.2d 250, 253 (Tex.App.--Tyler 1996, no pet.) (
citing Triton Oil & Gas Corp. v. Marine Contractors
 & Supply, 
Inc.
, 644 S.W.2d 443, 446 (Tex. 1982)).  It follows, then, that a summary judgment is not proper if the evidence upon which the party propounding the affirmative defense depends is in dispute.  In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in his favor.  
Nixon v. Mr. Property Management Co.
, 690 S.W.2d 546, 549 (Tex. 1985).         

Appellants’ suggested issues raise questions as to both sovereign and official immunity.  Although both are types of governmental immunity, sovereign immunity and official immunity are two distinct doctrines aimed at serving different policies. Sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the state.  
Federal Sign v. Texas Southern University
, 951 S.W.2d 401, 405 (Tex. 1997).  On the other hand, official immunity is an affirmative defense that protects government employees from tort liability (1) for the performance of discretionary duties (2) within the scope of the employees’ authority (3) provided the employees act in good faith.  
City of Lancaster v. Chambers
, 883 S.W.2d 650, 653 (Tex. 1994).  

Drawing on the standard applied to qualified immunity in 42 U.S.C. § 1983 suits, our supreme court has defined good faith as a test of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith.  
Chambers
, 883 S.W.2d at 656.  "[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred."  
Id
.  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." 
Id. 
 To controvert a defendant’s summary judgment proof on good faith, the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts."  
Id.
 at 657.  

Appellants’ first issue assigns error to the trial court’s failure to grant summary judgment for them in their official capacities under the doctrine of sovereign immunity.  In 
Vincent v. West Texas State University
, 895 S.W.2d 469 (Tex.App.--Amarillo 1995, no writ), we discussed the application of sovereign immunity to a suit against a state university employee in their official capacity.  We held such a claim is, in effect, a claim against the state and implicates sovereign immunity.  
Id.
 at 472.  To enjoy the benefits of the doctrine, the defendant must affirmatively plead it.  
Davis v. City of San Antonio
, 752 S.W.2d 518 (Tex. 1988).  When properly raised, sovereign immunity deprives the court of jurisdiction unless the plaintiff establishes a waiver by the state.  
Vincent
, 895 S.W.2d at 472. 

Because sovereign immunity belongs to the state and the protection it affords state employees is limited to their official capacities, we must consider whether the employees may assert that defense directly.  This question only arises where, as here, the plaintiff sues the employees in their official capacities but does not name an agency of the state as a defendant directly.  There is a split of authority on this question.  

In 
Smith v. Davis
, 999 S.W.2d 409 (Tex.App.--Dallas 1999, no pet.), the Dallas Court of Appeals considered the issue and found an employee could not assert sovereign immunity when the employer was not a named party.  
Id.
 at 416.  This is so, it reasoned, because “the immunity protects only the sovereign, only the sovereign is entitled to claim the defense or, possibly, decide to waive it by not affirmatively pleading it.”  
Id.
 at 416. The Dallas court also suggested that a ruling on sovereign immunity in the absence of the government entity would be an impermissible advisory opinion.  
Id.
 at 417.  The court recognized opinions from two other courts of appeals which permitted officials to assert sovereign immunity when their employers were not parties to the suit.  Those cases, 
Liberty Mut. Ins. Co. v. Sharp
, 874 S.W.2d 736, 738 (Tex.App.--Austin 1994, writ denied), and 
Gonzalez v. Avalos
, 866 S.W.2d 346, 352 (Tex.App.--El Paso 1993, writ dism'd w.o.j.), did not discuss the significance of the absence of the defendants’ employers as named parties. 

We do not agree with the holding in 
Davis
.  Because a claim against a state employee in their official capacity is, in effect, a claim against the state, 
Liberty Mutual
, 874 S.W.2d at 738, to that extent the state is a party.  
See, e.g., Hafter v. Melo
, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (in such a case the governmental entity is the real party in interest). Indeed, subject to certain exceptions, the state is obligated to defend the employee and to indemnify them for claims based on conduct in their official capacity.  Tex. Civ. Prac. & Rem. Code Ann. §§ 104.001-.009 (Vernon 1997 & Supp. 2001).  Whether the state is named as a party does not affect the role of its employees in their official capacity and should not affect their ability to rely on the immunity afforded to them in that capacity.

Appellants’ answer to May’s third amended petition specifically asserted sovereign immunity as an affirmative defense to the claims against them in their official capacities.  The defense was also asserted in appellants’ motion for summary judgment. May’s response to the third motion for summary judgment was extensive, consisting of 140 pages of text.  However, it did not address May’s assertion of sovereign immunity.  We find no basis for a waiver of sovereign immunity as to appellants in their official capacities.  Therefore, they were entitled to summary judgment to that extent and we sustain their first issue.

Appellants’ second issue assigns error to the trial court’s failure to grant summary judgment in their individual capacities on the basis of official immunity.  As noted above, to establish their right to summary judgment on official immunity, appellants had the burden of conclusively proving each element of that defense, specifically that they 1) were performing discretionary duties, 2) within the scope of the employee’s authority, 3) acting in good faith. 
University of Houston v. Clark
, 22 S.W.3d 915, 918 (Tex. 2000).  We consider whether each appellant met this burden. 

Darryl Williams

Appellants’ argument begins with the proposition that “May’s claims against Williams centers [sic] around his decision to remove May as chair of the department and reassign him to the position of Associate Dean without clinical responsibilities.”  They reason he is entitled to official immunity because, as dean of the medical school, the reassignment of a department chair is within his discretionary duties and evidence of the faculty’s lack of support for May establishes Williams’s good faith.  In support of the second element, Williams relies on the Professional Staff Bylaws of the school of medicine which provide, “[a] chairperson may be removed by action of the Dean on behalf of the governing body,” and an affidavit from Maximilian Buja, Dean of the University of Texas Health Science Center at Houston, that it is “standard practice” that department chairs serve at the will of the dean.

We agree that May’s claims center around his removal as chair of the department of ophthalmology.  However, a reading of May’s petition and response to the motion for summary judgment reveal several specific acts and omissions form the basis of his claims.  May claims the reassignment and the effective suspension of his clinical privileges and status as a faculty member were each done without affording him procedural due process.

Williams’s summary judgment evidence that the reassignment of a department chair is a discretionary act is uncontroverted.  While May represents it was his “understanding” that a department chair could only be removed by the board of regents, the Professional Staff Bylaws, however, conclusively established the acts were within the scope of Williams’s duties.  The remaining issue is whether Williams conclusively established that he was acting in good faith.

With regard to the removal of May as department chair without notice or a hearing, Williams relies on the Professional Staff Bylaws and an affidavit of Dr. Buja, who testified that department chairs may be removed without “cause, prior notice or a hearing.”  The question before us is whether May was entitled to due process before he could be removed as chair of the department.  This is a question of law on which Dr. Buja’s opinion has no bearing.  Under the fourteenth amendment to the federal constitution, due process is implicated when the state or its agents deprive a person of a protected liberty or property interest.  
Board of Regents v.
 
Roth
, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  To have a protectable property interest in public employment, a person must have more than a unilateral expectation, he must have a claim of entitlement. 
 Roth
, 408 U.S. at 576.  A claim of entitlement exists when the employee can only be dismissed for cause. 
Kruger v. Cressy
, No. 99-1857 (1st Cir. Jan 4, 2000) (unpublished memo opinion at 201 F.3d 427).  

The Professional Staff Bylaws of the medical school impose no limitation on the dean’s power to remove a department chair and May presented no contract or other evidence limiting Williams’s power to remove the chair of a department.  The facts of this case are strikingly similar to those presented in 
Kruger
.  
Kruger
 also involved the removal of a department chair at a state university. 
Id.
  Finding no substantive limitation on the dean’s power to remove a department chair, the court held there was no property interest which implicated the protections of the fourteenth amendment.  
Id.
  Consequently, the denial of notice and a hearing did not violate an established constitutional right.  Without a property interest in his chairmanship, May cannot establish his substantive due process claim.  Williams’s summary judgment evidence establishes his entitlement to official immunity for claims based on his removal of May as chair of the department of ophthalmology and the denial of summary judgment to that extent was error. 

We next consider Williams’s actions as they related to May’s status as a faculty member and his clinical privileges.  Because May’s status as a member of the faculty was protected by tenure, he had a protectable property interest in that position. Available authority supports the proposition that clinical privileges are also a protectable property interest.  
See, e.g.
, 
Woodbury v. McKinnion
, 447 F.2d 839 842 (5th Cir. 1971);
 Greenwood v. Office of Mental Health
, 163 F.3d 119 (2d Cir. 1998).  Here, the Professional Staff Bylaws specifically provided for the right to a hearing on actions adversely affecting his clinical privileges.

Relying on correspondence and their own affidavits, appellants’ position is based on the premise that May’s reassignment had no effect on his status as a member of the faculty or on his clinical privileges.  May responded with his affidavit that in August 1993, at the beginning of his leave of absence, he was instructed not to contact anyone in the department.  In his deposition testimony, Williams admitted telling May “he should not return to the department” or speak to the faculty or staff about his status, but denied an outright prohibition.  

The true nature and effect of Williams’s admonition to May is a question of fact.  Consequently, because we are reviewing a motion for summary judgment, we must take evidence favorable to May, as the non-movant, as true and resolve every reasonable doubt in his favor.  
Nixon
, 690 S.W.2d at 548.  We must therefore review May’s claims concerning his faculty status and clinical privileges on the basis that he was precluded from interacting with department faculty or staff.

Appellants assert that, while May’s tenure entitled him to continued employment, it did not entitle him to a particular salary or duties, so any change in those aspects of his employment did not deprive him of a protected property right or implicate due process.  They also argue that May’s due process claims are precluded by his failure to file a grievance using the school’s grievance process.

The record shows May did seek a hearing withing the school’s procedures.  In his March 30 letter to Williams, May requested a return “to full-time work as Professor and Chairman of the Department of Ophthalmology” and, contingent on denial of that request, May sought “a formal hearing be convened as soon as possible to review all charges which have been brought against me,” and further requested a review “[i]f any question of my medical competence has been brought forth.”  Williams’s April 7, 1994 response removed May as chair of the department, promised to “honor your request for a thorough investigation of [your clinical abilities.]”  When this review did not occur, acting through his attorney, May again requested a clinical review in September 1994.  The response from the school’s attorney was to grant his request, however, the review still did not take place until after May filed suit several months later.  No hearing was held on his removal as department chair or exclusion from the department.  Appellants have failed to show May’s due process claims are precluded by his failure to avail himself of the procedures provided.

With regard to his faculty status, appellants rely on Board of Regents Policy 06.04 entitled, “Establishing Rank and Awarding Tenure.”  Appellants’ motion for summary judgment included two pages from that eight-page document.
(footnote: 2)  The included portion relevant here provided:

(B) 
Tenured Appointment
.  A tenured appointment assures the right of the faculty member to a continuing academic position of employment.  The tenured faculty member is subject to possible adjustments regarding salary, administrative position and employment duties. 

*     *     *

(D) 
Academic Appointment
.  . . . Although tenure does not apply to administrative positions, faculty members holding administrative positions may be tenured in their respective academic units.

May does not contest the applicability of these provisions to his rights arising from his status as a tenured member of the faculty.  Although not cited by appellants, several cases hold that, absent a contractual provision limiting the employer, an instructor has no property right in a particular teaching assignment, or in teaching classes at all.  
Wagner v. Texas A & M University
, 939 F.Supp. 1297 (S.D. Tex. 1996), 
citing
 
Dooley v. Fort Worth I.S.D.
, 686 F. Supp. 1194, 1199 (N.D. Tex. 1987), 
aff'd
, 866 F.2d 1418 (5th Cir.), 
cert. denied
, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed. 2d 1021 (1989).  
See also
 
Davis v. Mann
, 882 F.2d 967 (5th Cir. 1989); 
Kelleher v. Flawn
, 761 F.2d 1079, 1086 (5th Cir. 1985) (change in duties which prevented professor from teaching specific classes was not a constructive discharge).

May’s response to the summary judgment motion did not contain any evidence that the reduction in his salary and change in duties were so significant as to exceed the “adjustments” permitted by the Board of Regents Policy.  Consequently, the summary judgment evidence establishes he was not deprived of a property interest as a tenured faculty member by changes in his salary and exclusion from the department of ophthalmology.

With regard to the effective suspension of May’s clinical privileges, appellants’ sole remaining argument is that “May can point to no conduct by Williams that deprived him of . . . the right to practice medicine at the facilities at which he maintained staff privileges.”  This argument ignores May’s affidavit that Williams instructed him not to speak to the faculty or staff of the department of ophthalmology and the summary judgment standards which require us to take that evidence as true.  It requires no leap of logic to conclude that if May was prohibited from speaking with the faculty or staff of the department, he could not exercise his clinical privileges there.  Because appellants’ argument is premised on the idea that he was not deprived of that right, they present no evidence in support of Williams’s good faith and have failed to establish his entitlement to official immunity.

As to the claims asserted against Williams, the trial court should have granted summary judgment in his individual capacity for claims arising from May’s removal as chair and any effect on May’s status as a tenured faculty member.  Denial of immunity for claims arising from interference with clinical privileges was proper.

David McCartney

The remaining claims against McCartney in his individual capacity were defamation, self-defamation, interference with prospective contractual relations, intentional infliction of emotional distress and denial of due process.  The conduct on which these claims are based are statements attributed to McCartney impugning May’s medical skills, administrative ability as department chair, mental stability, and honesty.  

Because appellants’ appeal is only from the denial of their immunity claim, we do not consider whether self-defamation is a recognized cause of action in Texas and express no opinion on that issue.  
See Lyle v. Waddle
, 144 Tex. 90, 188 S.W.2d 770, 772 (1945), and 
Doe v. SmithKline Beecham Corp
., 855 S.W.2d 248, 259 (Tex.App.--Austin 1993) (recognizing conflict of authorities), 
modified by
 
SmithKline Beecham Corp. v. Doe
, 903 S.W.2d 347 (Tex. 1995).

Challenging May’s claims for defamation, self-defamation, interference with prospective contractual relations, and intentional infliction of emotional distress, appellants’ motion sought to establish McCartney’s immunity by showing any statements he made were made in the course of performing discretionary duties, within the scope of his authority, and in good faith.  The only element now in dispute is whether appellants established that McCartney was acting in good faith.  

Again, the test for good faith is whether under the same or similar circumstances, a reasonable government employee could have believed that his actions were lawful based upon the information he possessed at the time of his conduct.  
Chambers
, 883 S.W.2d at 656.  May contends appellants bore a burden to establish the legitimacy of the concerns expressed in McCartney’s statements.  He presents no authority stating the test of good faith in that way.  However, we believe appellants’ evidence does establish that a reasonable person in McCartney’s position could have believed the statements were lawful.  

The first group of statements concern May’s ability to be an effective administrator of the department.  These statements were primarily based on the faculty’s loss of confidence in May.  When Williams spoke to other faculty members, he found support for these statements.  The fact that May continued to receive favorable reviews from his superiors does not alter the truth of the statements concerning the faculty’s view of May.

The second set of statements concern May’s clinical abilities.  There is nothing in the record to show any specific statement on this issue from McCartney.  In his own deposition, May only testified that he recalled “statements” about his clinical ability in a faculty meeting.  He acknowledged that there may have been a malpractice suit pending at the time, stating:  “It was touched upon that somehow this lawsuit may indicate that my clinical skills were not good.”  Even if this statement is attributed to McCartney, a reasonable person with knowledge of a malpractice claim could have believed a statement of the type alleged by May was lawful.

May next complains of statements McCartney assertedly made about his mental stability.  In his brief, May alleges these statements were that the terminal illness of May’s mother had taken a “heavy toll” on him, that he was “distraught,” “imbalanced,” and “self-destructive.”  As support for these allegations, May cites the deposition testimony of Williams and handwritten meeting notes of McCartney.  The statements that his mother’s illness had taken a “heavy toll” on May and that he was “distraught” over that circumstance are reflected in the record.  However, there is nothing to show these statements were defamatory or so extreme and outrageous as to evidence an intent to inflict emotional distress.  Other witnesses expressed their belief that anyone would suffer from stress in a similar situation.  Similarly, the record reflects McCartney had a discussion with Mittemeyer concerning the stress May was under due to his mother’s illness and suggesting some leave time would be helpful.  There is nothing to show a reasonable person would think this statement was unlawful.

With regard to the statements that he was imbalanced or self-destructive, May appears to rely on McCartney’s handwritten meeting notes.  May cites to several pages of these notes rather than specific passages.  The copies which appear in the record are, for the most part, illegible and we have failed to find the statements alleged.  Moreover, there is nothing to show these notes were published to any third party as required for a defamation claim.  
Hill v. Herald-Post Pub. Co., Inc.
, 877 S.W.2d 774, 778 (Tex.App.--El Paso 1994), 
reversed in part on other grounds
,
 Herald-Post Pub. Co., Inc. v. Hill, 
891 S.W.2d 638 (Tex. 1995).  May has failed to show that a reasonable person in McCartney’s position could not believe he was acting lawfully in making any personal notations he chose.  
See Chambers
, 883 S.W.2d at 657.

The final statement forming the basis for May’s claims was that during a meeting McCartney expressed the opinion that one or more bills from May to Medicare amounted to fraud.  The bills were prepared with May’s name, although the patients were seen by another doctor.  At the same meeting, May responded by explaining the bills were automatically generated and had not yet been reviewed by him or submitted for payment. 

It is apparent that submitting inaccurate bills to Medicare would be harmful to the school and that it was in the interest of members of the administration to prevent events of that type from happening.  May’s agreement that the bills were in error shows that McCartney had a basis for the statement attributed to him.  The statement May attributed to McCartney did not contain an allegation that May intended to submit fraudulent bills or had done so on other occasions.  A reasonable person in McCartney’s position could believe that he was entitled, even obligated, to express concerns he had with regard to bills sent to the Medicare program.

As to each of the statements alleged by May, the summary judgment record satisfies the good faith element set out in 
Chambers
.  Consequently, appellants have established McCartney’s entitlement to the defense of official immunity on each claim based on those statements.

Dorma Kohler

Dorma Kohler was the administrator of the Department of Ophthalmology at the Health Sciences Center.  Her responsibilities included financial management of the department.  May’s claims against Kohler arose from two statements he attributes to her. The first is that during a department meeting, Kohler stated the department had a projected deficit of $250,000.  May does not allege that Kohler blamed the projected deficit on his leadership of the department.  May’s only evidence that this statement was false is his equivocal deposition testimony that he recalled the department was profitable for each of the years he was chairman.  He has presented no exhibits or other evidence that Kohler could not have believed the statement concerning the department’s projected financial condition was true at the time she made it, as stated in her affidavit.

The second statement forming the basis for May’s claims against Kohler is that she told members of the faculty and staff that secretaries were spending an inordinate amount of time doing personal work for May.
(footnote: 3)  The record shows one conversation where May’s secretary, Andrea Adkins, discussed with Kohler the amount of personal work she was doing for May.  Kohler asked Adkins to provide her with copies of documents she prepared for May.  The record does not reflect what, if anything, was done with these documents.  As the administrator of the department, it was one of Kohler’s duties to keep the department running efficiently.  Determining how much employee time was spent on non-department work was related to the department’s efficiency.  

The summary judgment record shows that a reasonable person in Kohler’s position could believe they were acting properly in making each of the statements on which May’s claims against Kohler are based.  Therefore, she has established that those acts were in good faith under 
Chambers
, entitling her to official immunity.  Because the statements are the only conduct specifically alleged in May’s petition as support for the causes of action asserted against Kohler, her immunity applies to each of those claims.

Appellants’ third issue challenges the denial of their defense of sovereign immunity on May’s claims under Title 42, Section 1983 of the United States Code (section 1983 claims), to the extent those claims are asserted against them in their official capacities.  Appellants cite 
Quern v. Jordan
, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), for the proposition that section 1983 does not abrogate a state’s sovereign immunity. Because a suit against them in their official capacities is in effect a suit against the sovereign, they have immunity in that capacity unless waiver is established.  
Vincent
, 
supra
.

Appellants then cite 
Turner v. Texas Dept. of Mental Health and Mental Retardation
, 920 S.W.2d 415, 418 (Tex.App.--Austin 1996, writ denied), as support for their contention that “a § 1983 cause of action cannot be maintained against state agencies or officials in state court.”  
Turner
 does not support that proposition.  The 
Turner
 court actually wrote that the plaintiff could not maintain his section 1983 action in state court “because neither the State nor its agencies are ‘persons’ within the meaning of § 1983.” 
Id.
 (citing 
Will v. Michigan Dept. of State Police
, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)).

May responds by citing an unpublished opinion from the Dallas Court of Appeals for the proposition that the denial of the sovereign immunity as a defense may not be raised by interlocutory appeal because it concerns the merits of his section 1983 claim and not the question of immunity.  We remind counsel of the provisions of Texas Rule of Appellate Procedure 47.7 which prohibit the citation of unpublished opinions as authority.   He also cites 
Cameron County v. Carrillo
, 7 S.W.3d 706 (Tex.App.--Corpus Christi 1999, no pet.), as support for his position that the denial of summary judgment based on sovereign immunity is not subject to interlocutory appeal.  
Carrillo
 actually held that the 
county
 could not bring an interlocutory appeal from the denial of a claim of sovereign immunity.  This is so because the language of the statute governing interlocutory appeals provides such appeals may be brought from an order which “denies a motion for summary judgment that is based on an assertion of immunity by 
an individual
 who is an officer or employee of the state.”  Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon 1997) (emphasis added).  In 
Carrillo
, the appellant was the county.  Here, appellants are individuals and fall within the statute.  
See also
 
City of Robstown v. Ramirez
, 17 S.W.3d 268, 276 (Tex.App.--Corpus Christi 2000, pet. filed).  

Appellants established that they were entitled to sovereign immunity on May’s section 1983 claims to the degree they were sued in their official capacities.  Because May failed to establish a waiver of that immunity, appellants were entitled to summary judgment to that extent and the trial court’s denial was error.

Appellants’ fourth and final issue concerns May’s claims against them in their individual capacities under section 1983.  Those claims assert the denial of his procedural and substantive due process rights.  Qualified immunity against section 1983 claims requires proof of effectively the same elements as official immunity under Texas law.  
See
 
Harlow v. Fitzgerald
, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In 
Harlow
, the Court stated the good faith element as whether the official’s conduct “violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.”  
Id.
 at 818.

Appellants’ argument in support of this issue mirrors the arguments made in support of their second issue.  This includes the proposition that May was not excluded from the department and therefore there was no impact on his clinical privileges or status as a faculty member.  As we noted above, because this premise is based on a disputed question of fact, we must reject it for purposes of reviewing the summary judgment motion.  The threshold issue is whether, accepting his evidence as true, the record supports May’s allegation that he suffered the deprivation of protected property rights.

May’s argument also tracks the argument presented in response to appellants’ second issue.  Citing 
Wagner
, 
supra
, he argues that the university tenure policies gave him a contractual right to specific duties and his assignment as associate dean with “menial assignments” and “substantial reduction in pay” deprived him of protected liberty and property interests.  The record does not support this contention.

As discussed above, the professional staff bylaws imposed no limitation on the dean’s power to remove a department chair.  Without such limitations, there is no property interest in that position.  
Kruger, supra
.  Similarly, Board of Regents Policy 06.04  controverts May’s contention that he had a right in specific duties.  That policy expressly provides a faculty member’s appointment is subject to adjustments in salary, administrative position, and duties.  Without a contractual right to specific duties, May did not have a property interest implicating due process rights.

May did, however, have a protectable property right in his clinical privileges, as shown by the professional staff bylaws and clearly established law.  
See
 
Woodbury
, 447 F.2d at 842;
 Greenwood
, 163 F.3d at 119.  Assuming, as we must, that Williams barred May from the department, May was deprived of his right to exercise his clinical privileges without notice or a hearing.  The evidence shows Williams was aware of the policies establishing procedural prerequisites for actions adversely affecting clinical privileges.  

Although they had no authority to make any decision which denied May of a clearly established right under the federal constitution, May seeks to preclude Kohler and McCartney’s showing of immunity by arguing their “unfounded attacks on Dr. May’s mental status, leadership, and professional competence” were causal factors in Williams’s actions.  Our holding that May’s clinical privileges were the only protectable property right affected by appellants’ actions limits the issues dispositive of McCartney and Kohler’s immunity claim.  May has not alleged that any conduct of Kohler led to the denial of notice or a hearing with regard to his clinical privileges.  Therefore, she was entitled to qualified immunity on May’s section 1983 claims. 

There is evidence in the record that McCartney had a conversation with Williams in which McCartney opined that a review of May’s clinical ability should not be undertaken because any possible outcome would be harmful to everyone involved and “should be avoided.”  If accepted as true by a jury, this evidence could support a finding that McCartney engaged in conduct which contributed to the deprivation of May’s rights to procedural due process.  The trial court properly denied McCartney’s claim of qualified immunity on this aspect of May’s section 1983 claim.

May presents additional arguments with regard to his substantive due process claims.  He contends we have no jurisdiction to consider this issue because it concerns the merits of his claim rather than the question of immunity.  Appellants cite no relevant authority in support.  

Substantive due process protects a person from the deprivation of property or liberty by arbitrary state action.  
Simi Investment Co. v. Harris Co.
, No. 99-20686 (5th Cir. December 21, 2000).  Our review is limited to the claims arising from what we have found to be the sole protectable property right of May, his clinical privileges.  

Because the record affirmatively shows Kohler did not engage in any conduct which prevented May from exercising his clinical privileges, it establishes her qualified immunity as to May’s substantive due process claims. 

May has presented summary judgment evidence that Williams and McCartney engaged in conduct which excluded him from the department facilities, effectively suspending his clinical privileges.  Other evidence, including correspondence between May, Williams and McCartney, shows they had no specific concerns with regard to May’s medical competence.
(footnote: 4)  Appellants have failed to conclusively establish McCartney and Williams’s qualified immunity on May’s substantive due process claims.

Summary

In summary, we hold the trial court erred in denying appellants’ summary judgment based on immunity as to the following claims:  all claims asserted against Williams, McCartney and Kohler in their official capacities; claims asserted against Williams in his individual capacity except for claims for denial of due process with regard to the suspension of May’s clinical privileges; claims against McCartney in his individual capacity except for claims for the denial of procedural due process with regard to the suspension of May’s clinical privileges; and all claims against Kohler in her individual capacity.  As to the claims we hold the trial court erred in denying judgment, those portions of the trial court judgment are reversed and remanded for further proceedings consistent with this opinion.  The remainder of the trial court’s judgment is affirmed.

John T. Boyd

 Chief Justice

Publish.

FOOTNOTES
1:
Bob Dickenson, Senior Justice, sitting by assignment.

2:
The document index indicates that excluded portion of the document contained sections entitled “concept of tenure” and “purpose of tenure.”

3:
The record suggests that most of what was described as personal work consisted of preparing correspondence concerning the health and treatment of May’s mother.

4:
It is important to distinguish between conduct initially excluding May from the department, and the process used to return him to active practice after at least two years away from surgery.