# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00168-CV

**Texas A&M University, Texas A&M University System, Dr. Jerry Gaston, and Eugene Ray, Appellants**

**v.**

**Don Thompson, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. 95-08113, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Texas A&M University, the Texas A&M University System, Dr. Jerry Gaston, and Eugene Ray appeal from the interlocutory order denying the portion of their motion for summary judgment asserting that Gaston and Ray were protected by various immunities from Don Thompson's complaints. We will affirm the order in part, but reverse and render judgment against Thompson's claims that appellants in their official capacities violated his federal constitutional rights.

## BACKGROUND

Thompson worked as an assistant power plant superintendent at Texas A&M University ("TAMU"), a part of the Texas A&M University System ("the System"). Dr. Jerry

Gaston was a vice president for administration at TAMU and Eugene Ray was the deputy director and interim executive director of TAMU's physical plant department.

Thompson's complaints arise from the way in which appellants responded to his reports of problems in the physical plant department's solicitation of bids for an expansion of the physical plant's cogeneration program ("the Cogen project"). The System eventually approved a development agreement with Tenneco that included a confidentiality agreement to prevent disclosure of project documents during negotiations. Thompson and others reported that the System violated the confidentiality agreement by disclosing some information to a competitor that bid unsuccessfully. Thompson and others also reported this disclosure to auditors hired by the System to investigate the Cogen project. Thompson continued to report this disclosure as a violation of law, and also reported the failure by others to pass this report along as a separate violation of law. Thompson also reported that special treatment was given to the competitor, that the competitor's proposal might violate state law, and that TAMU improperly modified its agreement with Tenneco. (Eventually, the Legislature waived TAMU's sovereign immunity, Tenneco sued, and TAMU paid Tenneco $27 million.)

On January 13, 1995, Gaston and Ray asked for Thompson's resignation. When he declined, Gaston told Thompson he was suspended based on a state management audit report that found poor management had caused morale problems in the physical plant department. Ray reported that he received many complaints about Thompson and his supervisor's handling of administrative duties, and that Thompson had ignored Ray's direct order to stop work on a chilled water pumping project. Thompson was placed on administrative leave pending further investigation by an ad hoc committee. Thompson said he was surprised because he had previously received only good

2

performance reviews and had not received any warning or counseling regarding his performance. Gaston ordered Thompson escorted from the premises in plain view of the remaining staff. Thompson's belongings were placed in a box in the hallway outside his office and left there for about a month before being inventoried. A banner proclaiming "Under New Management" was hung on the physical plant building.

On February 21, 1995, Gaston told Thompson that the committee recommended firing him. Thompson was not allowed to address the committee, but was permitted to file a written response. His employment was terminated on March 31, 1995 for his failure to follow TAMU policies and his lack of people skills.

Thompson requested an arbitration pursuant to TAMU policy. Several arbitrations were set and postponed, but the final attempt was cancelled at Gaston's direction and not rescheduled despite Thompson's requests.

Thompson sued for violations of his constitutional and statutory rights by Gaston, Ray, TAMU, and the System. In his fifth amended original petition, he complains that Gaston and Ray individually and conspiratorially violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the federal constitution. He complains that they intentionally inflicted emotional distress on him. He further complains that TAMU and the System violated his rights under the state and federal constitutions and violated the Whistleblower Act.

Appellants moved for summary judgment, contending that various forms of immunity protected them from all of Thompson's claims. They also raised other grounds for summary

3

judgment and reject Thompson's version of events. The district court denied their motion without stating a basis.

## DISCUSSION

Appellants raise a single issue on appeal, contending that the district court erred by denying their motion for summary judgment based on their assertions of immunity. Appellants assert the protection of sovereign immunity, qualified immunity, and quasi-judicial or official immunity against Thompson's numerous claims. Appellants claim sovereign immunity regarding federal- and state-law claims made against Gaston and Ray in their official capacities. Regarding claims made against Ray and Gaston in their individual capacities, appellants assert they are protected by qualified immunity from federal claims and official immunity from state claims.

These immunities involve both immunity from suit and immunity from liability. *See Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002). Immunity from suit bars a suit against the State—depriving a trial court of subject matter jurisdiction even if liability is undisputed—unless the state expressly gives consent to the suit. *Id.* Immunity from liability protects the State from judgments, even where the Legislature expressly consents to permit a suit. *Id.* Immunity from liability also persists unless it is waived. *General Serv's Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001).

We review the denial of a motion for summary judgment under the same standard of review that governs the granting of a summary judgment. *See San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex. App.—San Antonio 1996, no writ). Summary judgment is appropriate only if the record establishes that there is no genuine issue of material fact, and that the movant is

4

entitled to judgment as a matter of law on a ground set forth in the motion. *See* Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who conclusively establishes all elements of an affirmative defense is entitled to summary judgment. *Cathey*, 900 S.W.2d at 341.

Thompson alleges five causes of action. Three are expressly against Gaston and Ray individually; by two claims, he alleges they violated his federal constitutional rights and, by the third, he contends that they intentionally inflicted emotional distress upon him. The remaining two claims are expressly against TAMU and the System for violations of his federal and state constitutional rights and the Texas Whistleblower Act. Because Thompson alleges that these violations occurred at least in part through actions of Gaston and Ray, we will examine the application of sovereign immunity to these claims as they can be construed against Gaston and Ray in their official capacities.

**Official capacity**

A suit against state employees in their official capacities is equivalent to a suit against the State; accordingly, employees acting in their official capacities share the State's sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Texas Dep't of Health v. Rocha*, 102 S.W.3d 348, 353 (Tex. App.—Corpus Christi, 2003, no pet.). The Texas Supreme Court has long recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue the State. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity protects universities. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694, n.3 (Tex. 2003). Sovereign immunity

5

does not, however, bar plaintiffs from seeking equitable relief from violations of law or determination of rights under the law. *Federal Sign*, 951 S.W.2d at 404.

There is no dispute on appeal that Gaston and Ray are entitled by their employment to claim sovereign immunity concerning claims made against them in their official capacities.

### Federal claims

Thompson claims that appellants, acting separately and in conspiracy, violated several of his rights under the federal constitution. Suits for violations of the federal constitutional provisions are statutorily authorized. *See* 42 U.S.C.A. §§ 1983, 1985 (West 2003). Section 1983 confers a private right of action against a person who deprives another of federal constitutional rights.[1] *See Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984). Similarly, section 1985(3) creates a private right of action for damages for injury or deprivation caused by two or more persons conspiring to deprive another person or class of persons of constitutional rights. *See id*. n.4.

Appellants contend that the Eleventh Amendment of the United States Constitution bars a suit against Gaston and Ray in their official capacities in state district court. *See* U.S. Const. amend XI. That amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Id*. Because

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C.A. § 1983 (West 2003).

the Eleventh Amendment expressly restrains only "[t]he Judicial power of the *United States*," however, this state-court suit presents no Eleventh Amendment question. *See id.* (emphasis added); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-64 (1989); *Maine v. Thiboutot*, 448 U.S. 1, 9 n.7 (1980).

Appellants alternatively contend that federal claims cannot lie against Gaston and Ray in their official capacities because the State is not a person under sections 1983 and 1985. *See Will*, 491 U.S. at 71. Although the non-person status of the states might not seem to relate to immunity, the following excerpt from the Supreme Court's analysis makes plain the connection:

> Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.

*Id.* at 66-67. In other words, Congress did not by enacting section 1983 waive the states' sovereign immunity in state courts.

Finding no waiver of the State's immunity or other authorization of a suit for damages against the State for violations of the federal constitution, we conclude that the district court erred by denying the motion for summary judgment against Thompson's claims for damages based on violations of his federal constitutional rights by Ray and Gaston acting in their official capacities. As set out above, because immunity does not bar suits for equitable relief from constitutional violations, the district court correctly denied summary judgment against Thompson's claims for equitable relief. *See Federal Sign*, 951 S.W.2d at 404.

7

*State claims*

Appellants contend that, because sovereign immunity shields them from liability in their official capacities, the district court erred by denying their motion for summary judgment against all state-law claims made against them in their official capacities.

We conclude that the district court did not err by denying summary judgment against the state-law claims made against Gaston and Ray in their official capacities. Thompson's fourth claim is not barred by sovereign immunity because he thereby requests equitable relief based on the violations of constitutional rights by a state official. *See Federal Sign*, 951 S.W.2d at 404. The fifth claim—violation of the Whistleblower Act—is within the scope of a statutory waiver of sovereign immunity that expressly permits public employees who are discharged in violation of that act to sue for damages. *See* Tex. Gov't Code Ann. § 554.003(a) (West Supp. 2003); *Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 143 (Tex. App.—Austin 1993, pet. denied). The remainder of the claims are either based on federal law or made against Gaston and Ray in their individual capacities; they are accordingly discussed elsewhere. We affirm the denial of the motion for summary judgment regarding Thompson's fourth and fifth claims made against Gaston and Ray in their official capacities.

**Individual capacity**

Claims against government employees in their individual capacities are distinct from claims against them in their official capacity. *Vela v. Rocha*, 52 S.W.3d 398, 403 (Tex. App.—Corpus Christi 2001, pet. denied). Some courts insist on distinguishing immunity from state-law claims (quasi-judicial or official immunity) and immunity from federal section 1983 claims

8

(qualified immunity), although others find the terms interchangeable. *Compare Haynes v. City of Beaumont*, 35 S.W.3d 166, 175 (Tex. App.—Texarkana 2000, no pet.) (distinguishing nomenclature on federal and state claims) *with City of Houston v. Kilburn*, 849 S.W.2d 810, 812 n.1 (Tex. 1993) (qualified, official, discretionary, good-faith, and quasi-judicial immunities interchangeable).

Thompson alleges that Gaston and Ray violated several constitutional rights, that they conspired to do so, and that they intentionally inflicted emotional distress upon him. Appellants assert that they are entitled to quasi-judicial or official immunity from all state law claims brought against them in their individual capacities. Appellants also assert that they are entitled to qualified immunity from the claims that they violated and conspired to violate Thompson's federal constitutional rights.

### State claims

Thompson's only state-law claim against Gaston and Ray in their individual capacities is that they intentionally inflicted emotional distress.[2]

Unlike sovereign immunity, the doctrine of official immunity is not a bar to suit (a jurisdictional issue) but is a bar to liability and shields the party claiming official immunity from liability in the suit individually. *McCartney v. May*, 50 S.W.3d 599, 605 (Tex. App.—Amarillo 2001, no pet.). Official immunity is an affirmative defense which protects government employees who act in good faith from liability, in their individual capacities, related to the performance of

---

[2] To recover damages for intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

9

discretionary duties within the scope of the employee's authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Because official immunity is an affirmative defense and this is a summary-judgment case, the defendants must conclusively establish all elements of the defense. *See id*.; *Vela*, 52 S.W.3d at 404.

Appellants moved for summary judgment contending that appellants acted within their discretion, within the scope of their authority, and in good faith. Thompson responded that appellants lacked the discretion and authority to create a committee to investigate him and to cancel the arbitration hearing. He complains on appeal that appellants did not act within the scope of their authority or in good faith when they suspended him on the basis of rumors and anonymous tips, did not allow him to appear before an investigating committee, denied him the right to an impartial tribunal, canceled the arbitration, escorted him off campus publicly, issued a press release that stigmatized him, denied him any hearing, and terminated him while promoting others who performed their jobs badly.

We use a standard of objective reasonableness to measure good faith, without regard to the official's subjective state of mind. *Scott v. Britton*, 16 S.W.3d 173, 179 (Tex. App.—Houston [1st Dist.] 2000, no pet.). To be entitled to summary judgment, an official must prove that a reasonably prudent official might have believed that the action taken was appropriate. *See id*. The official need not prove that it would have been unreasonable to take different action, nor that all reasonably prudent officials would have acted as he did. *Id*. To controvert the official's summary-judgment proof on good faith, the plaintiff must show that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. *See Chambers*,

10

883 S.W.2d at 657. The *Chambers* test balances two competing interests: the "need" aspect concerns the urgency and circumstances surrounding the employee's action; the "risk" aspect refers to the likelihood that the employee's act will cause serious harm. *Chambers*, 883 S.W.2d at 656-57. This test applies to cases other than police chases. *See Cobb v. Texas Dep't of Crim. Justice*, 965 S.W.2d 59, 64 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (fixing floor).

Appellants asserted at trial that "[n]one of the Defendants' actions are such that no reasonable official would have acted in the manner alleged." By affidavit, Ray and Gaston assert that Thompson was fired for failing to stop working on a project as ordered and failing to work well with others. The affiants describe management problems in the plant. They also assert that they learned of Thompson's view that he was being fired in retaliation for his reports about the cogeneration bidding only in his response to the committee's recommendation that Thompson be fired. Gaston and Ray both assert that they acted within their authority and with good faith toward Thompson.

Neither affiant explains, however, why a reasonable official would think it appropriate, for example, to remove Thompson using guards, create a committee to investigate his employment but restrict his participation before that committee to responding to its report, and cancel an arbitration required by TAMU policy requested repeatedly by Thompson, but not cancel the arbitrations of other employees. There is no showing of urgency in his removal, of danger in his participation in the committee hearing before his termination, or of any reason to cancel the arbitration process. These actions call into question whether appellees acted in good faith toward

11

Thompson. Although further proceedings may show these actions to be appropriate, we conclude that the record before us does not show that a reasonable official could find these actions appropriate.

Because we conclude that appellants did not establish every element of their defense, the district court properly overruled the motion for summary judgment.

### *Federal claims*

The elements of a qualified immunity defense against section 1983 claims are essentially the same as the elements of an official immunity defense under Texas law. *See McCartney v. May*, 50 S.W.3d 599, 613 (Tex. App.—Amarillo 2001, no pet.). Section 1983 provides that every person who, under color of law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. 42 U.S.C.A. § 1983 (West 2003). The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend XIV. Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 242 (Tex. App.—Dallas 2000, pet. denied).

When a defendant pleads qualified immunity to a section 1983 claim and shows he is a government official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut the defense. *Carrera v. Yepez*, 6 S.W.3d 654, 661 (Tex. App.—El Paso 1999, pet. dism'd w.o.j.) (citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992)). The plaintiff must

show that (1) the official's conduct violated a federally guaranteed right, (2) the right was clearly established, and (3) the official's conduct was objectively unreasonable in light of the clearly established right. *Carrera*, 6 S.W.3d at 661 (citing *Salas*, 980 F.2d at 306). If the conduct complained of did not violate clearly established law, summary judgment is proper without an inquiry into reasonableness because an official could not reasonably be expected to know that the law forbade his conduct. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Finlan*, 27 S.W.3d at 243. If the conduct complained of did violate clearly established law, the court must then determine whether the defendant's conduct was objectively reasonable. *Finlan*, 27 S.W.3d at 243. While the alleged wrong need not have been previously held unlawful, the unlawfulness must be apparent in light of pre-existing law in order to subject the official to liability. *Id*.; *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir.1988). As a result, qualified immunity is a powerful shield that will protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Thompson alleges that Gaston and Ray violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments. He complains of violations such as firing him for speaking on matters of public concern, unreasonably searching and seizing his property, denying him the process due and guaranteed in the termination of his employment, denying him process given to other fired employees, and damaging his professional reputation without giving him the opportunity to clear his name. He also alleges that they conspired to violate these rights. Appellants moved for summary judgment on grounds that Gaston and Ray were entitled to qualified immunity from such claims brought against them in their individual capacities.

13

Thompson does not dispute that Gaston and Ray were in positions requiring discretion. He disputes that they carried their burden on the remaining elements of the defense. Thompson complains that appellants violated his property interest in his continued employment, his liberty interest in his reputation, his right to speak freely, and his right to privacy.

***Property interest***. Thompson asserts that the System created a property interest through its employment policies 2.3.3 and 2.3.4. A protected property interest in employment, process, or benefit exists only when an employee has a legitimate claim of entitlement to—not just an abstract need, desire, or unilateral expectation of—the employment, process, or benefit. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The presumption that employment in Texas is at will is difficult to overcome. *See Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). An employment manual alters the at-will status only if it contains language that specifically and expressly limits the employment relationship and curtails the employer's right to terminate the employee. *Texas State Employees Union v. Texas Workforce Comm'n*, 16 S.W.3d 61, 66 (Tex. App.—Austin 2000, no pet.). Thompson contends that the policy 2.3.3 alters the at-will relationship by requiring "adequate cause" for dismissal of nonfaculty employees at TAMU, and that 2.3.4 creates a right for employees terminated for cause to have an arbitrator review his complaint regarding their discharge. Thompson produced more than conclusory evidence that he had a right that appellants violated.

Both the idea that a manual can create property interests and the evidence that the TAMU manual created such a property interest show that Thompson's claimed right was well-established. Appellants do not challenge Thompson's claim that they denied him the arbitration

14

promised by TAMU policy and requested by Thompson. There is no evidence that the denial of this clearly established right was objectively reasonable. There is at least a fact question regarding the objective reasonableness of the denial of this right. We conclude that the district court did not err by denying appellants' motion for summary judgment on this issue.

*Liberty interest*. To show deprivation of a constitutional liberty interest, Thompson must show that he was discharged without meaningful process, that he requested and was denied a chance to clear his name, and that false, defamatory charges were made public in connection with the discharge. *See Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989). Public officials do not act improperly in publicly disclosing charges against discharged employees, but they must thereafter afford procedural due process to the person charged. *In re Selcraig*, 705 F.2d 789, 798 (5th Cir.1983). Moreover, the process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee. *Roth*, 408 U.S. at 573 n.12. If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, however, the individual may recover monetary damages under section 1983 for the deprivation of his liberty under the Fourteenth Amendment. *Rosenstein*, 876 F.2d at 395-96. The employee must prove the following: that he was discharged, that defamatory charges were made against him in connection with the discharge, that the charges were false, that no meaningful public hearing was conducted pre-discharge, that the charges were made public, that he requested a hearing in which to clear his name, and that the request was denied. *Id*. at 395-96.

15

Thompson asserts that appellants violated his liberty interest in his reputation by their conduct surrounding his suspension and dismissal and by failing to offer a forum in which he could clear his name. He complains that they announced his suspension in a press release that alleged a $300,000 cost overrun, that they had him escorted from the building by security in full view of those nearby, that they posted a sign in full view of the campus that the plant was "under new management. Thompson concedes that a committee was appointed to review his suspension, but complains that he was prohibited from contacting the committee, submitting evidence to the committee before it made its decision, being present when the committee interviewed witnesses in unsworn testimony, testifying before the committee, or participating in other ways. As discussed above, he was also denied the post-termination arbitration TAMU policy promised him. We find no evidence of any other name-clearing hearing.

There is ample evidence that the liberty interest was well-established, and there is no evidence to suggest that appellants were objectively reasonable to deny Thompson's name-clearing hearing. There is at least a fact question regarding the objective reasonableness of the denial of the right. The district court did not err by denying appellants' motion for summary judgment on this issue.

*Other rights*. Thompson complains about violations of his right to free speech, to privacy, and to equal protection. He contends that appellants violated his right to free speech by firing him for speaking out on matters of public concern. He contends that appellants violated his right to privacy by unreasonably searching and confiscating his property; some of his property either vanished or was damaged, and the remainder was left unattended and univentoried in a box outside

16

his former office for a month after his termination. He contends that appellants violated his right to equal protection by terminating him for reasons that did not result in termination of others and by denying him the arbitration that was provided to others.

The rights allegedly violated are well established. While there is some evidence indicating that appellants had objectively reasonable bases for firing him, searching and seizing his belongings, or treating him differently from others, the record contains other evidence indicating that these actions were taken for retaliatory reasons that are not objectively reasonable; thus, a fact question exists that makes the denial of summary judgment appropriate. *See Yepez*, 6 S.W.3d at 654; *see also Bexar County v. Giroux-Daniel*, 956 S.W.2d 692, 698 (Tex. App.—San Antonio 1997, no pet.). The district court did not err by denying the motion for summary judgment.

Our decisions are based on the record before us in this interlocutory appeal of the denial of a motion for summary judgment based on assertions of immunity. Further proceedings up to and including trial may produce additional evidence that dictates a different ultimate conclusion.

## CONCLUSION

We conclude that appellants have sovereign immunity from Thompson's claims for damages based on violations of his federal constitutional rights by Ray and Gaston acting in their official capacities. We reverse the denial of the motion for summary judgment regarding these claims, and render judgment that Thompson take nothing by them.

We conclude that the district court properly determined that appellants were not entitled to summary judgment based on their remaining assertions of immunity. We affirm the remainder of the order denying appellants' motion for summary judgment.

17

The cause shall proceed on these remaining claims.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed:   December 18, 2003