Henry S. DOOLEY

v.

**FORT WORTH INDEPENDENT
SCHOOL DISTRICT.**

Civ. A. Nos. 4–85–84–E, 4–85–725–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 9, 1987.

Henry S. Dooley, Fort Worth, Tex., pro se.

Donald W. Hill, Hill, Hicks & Collins, Dallas, Tex., for Dooley.

Quillin, Owen & Thompson by Tom Carr, Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION

MAHON, District Judge.

Plaintiff, Henry S. Dooley, brought this action against Defendants, Fort Worth Independent School District and H. Richard O'Neal, Individually and as President of the Fort Worth School Board[1] pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*, Title 42, United States Code, Section 1983 and Fourteenth Amendment of the United States Constitution. Specifically, Plaintiff, a black male, alleges employment discrimination on the basis of race. This action was tried before the Court on April 13–16, 1987, the Honorable Eldon B. Mahon presiding.[2]

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law in support of the judgment hereinafter ordered.

Plaintiff, Henry S. Dooley, resides in Tarrant County, Texas. Defendant, Fort Worth Independent School District, is an independent school district, duly organized under the laws of the State of Texas with its principle administration offices in Fort Worth, Tarrant County, Texas.

Plaintiff began working for Defendant School District in August 1967. He was employed under a series of one year term contracts each year until August 24, 1970. Plaintiff entered into a "continuing" contract of employment with Defendant School District on August 24, 1970, and remained employed under that continuing contract until his termination at the end of the 1984–85 school term.

During the 1983–84 school year, Plaintiff was assigned to teach sixth grade physical education. As an additional duty, Plaintiff coached boys' athletics at Meachum Middle School. On October 7, 1983, Plaintiff, while coaching a football practice session, tackled an eighth grade student by the name of Jackie Hardy. On October 10, 1983, Ronnie White, Athletic Director FWISD, and the school principal, Johnny Bradford investigated the October 7, 1983 incident. White invited parents, the Vice Principal, and all students involved in the incident of October 7 to participate. Present during the questioning of each and every witness was Plaintiff, and his representative, Ms. Karen Gambrell. Upon concluding his investigation, White suspended the Plaintiff from coaching until a final determination was made. On October 11, 1983, White's written recommendation was sent to Dr. T.C. Wallace, Director of Personnel, setting out White's findings that

---

1. At the close of Plaintiff's case, Defendant moved for a directed verdict with respect to both defendants. Since Plaintiff had presented no evidence against Dr. H. Richard O'Neal, the Court granted Defendant's motion for directed verdict with respect to Dr. O'Neal and carried along Defendant's motion for directed verdict with respect to the Fort Worth Independent School District.

2. On March 30, 1987, the Court issued an Order denying Plaintiff's motion for a jury trial because Plaintiff's request for a jury approximately one month before trial was untimely, the majority of Plaintiff's complaint involved Title VII claims over which there is no right to a jury trial, and severence of plaintiff's claims which could arguably be heard by a jury would not have been in the best interest of the parties since the facts of all Plaintiff's claims are the same.

Plaintiff had tackled an eighth grade student.

On October 20, 1983, Defendant's Superintendent of Schools, Dr. I. Carl Candoli, notified Plaintiff of the District's proposed action to relieve him of all coaching duties. The notice further set forth the grounds for proposed reassignment from coaching. The Plaintiff was also notified of his right to contest the proposed action in a hearing. On October 25, 1983, Plaintiff notified the Superintendent of his desire for a hearing to contest his proposed release from the coaching assignment and on November 3, 1983, Defendant School District notified Plaintiff that his requested hearing would begin at 9:00 a.m. on November 15, 1983.

On November 15, 1983, a hearing was held as requested by Plaintiff. The hearing panel included Joe Ross, Assistant Superintendent for Community Employee and Governmental Relations, as Chair Person (white male), Ms. JoAnn Wright, Program Director for Student Affairs (white female), and Mr. Gus Whitted, Director of Affirmative Action (black male). Plaintiff was represented by counsel at the hearing and given the opportunity to cross examine school district witnesses and to present witnesses of his own. On November 16, 1983, the hearing panel voted unanimously to relieve Plaintiff of his coaching assignment.

On November 23, 1983, Plaintiff was notified of the administrative panel's decision and of his right to appeal the decision to the board of education. Plaintiff was notified that his appeal would be based upon the record prepared before the administrative panel. On November 28, 1983, Plaintiff notified the Superintendent of his desire to appeal the administrative panel's decision to the school board. On December 8, 1983, Defendant O'Neal notified Plaintiff that his hearing before the Board would be on January 24, 1984.

On January 24, 1984, a hearing was held before the Board of Education based upon the record before the administrators, however, there was no official vote by the Board. Therefore, Plaintiff was notified on February 22, 1984, that the board would

rehear his appeal on February 28, 1984. On February 28, 1984, based upon the record, the transcript and exhibits collected at the hearing before the administrative panel and the arguments of counsel for both parties, the Board voted in open meeting to terminate Plaintiff's coaching assignment effective February 29, 1984. The Board found that Plaintiff had used excessive and unreasonable force upon an eighth grade student by tackling said student on October 7, 1983. The Board further found that the physical force used was so excessive and unreasonable that it violated the policies of the Defendant School District. The Board directed the Superintendent to remove Plaintiff from all coaching assignments, to terminate his separate coaching stipend effective February 29, 1984, and that Plaintiff be transferred from Meacham Middle School.

On February 29, 1984, written findings of the Board were sent to Plaintiff. Plaintiff was further notified that he had the right to appeal the decision of the Board of Education to the Commissioner of Education in the Texas Education Agency. Plaintiff appealed the action of the Board to the Commissioner of Education of Texas. On June 1, 1984, a hearing was held before a hearing officer appointed by the State Commissioner of Education. On January 10, 1985, Commissioner of education ordered that Plaintiff's appeal be in all things denied. On February 5, 1985, Plaintiff filed Civil Action No. 4-85-84-E against Defendant, Fort Worth Independent School District. On March 14, 1985, Plaintiff filed an original petition in the 167th Judicial District Court of Travis County, Texas, against the Fort Worth Independent School District and Texas Education Agency appealing the Commissioner's decision.

On or about March 8, 1984, Plaintiff, pursuant to the Board's order of February 28, 1984, was temporarily assigned to the Transportation Department pending an opening in a teaching field which Plaintiff was qualified. Said assignment continued to the end of the 1983-84 school term. Plaintiff was paid in full as a teacher.

Plaintiff's contract with Defendant reads as follows:

It is understood and agreed by the Parties to this agreement that the Superintendent of Schools shall have the right to assign such duties to the teacher as the Board shall deem proper, and may from time to time, assign the teacher to duties other than or additional to those contemplated hereunder.

Plaintiff's contract provides that he may be assigned to positions other than teaching. Plaintiff was temporarily reassigned by the Superintendent of Schools to Defendant Transportation Department because there were no teaching vacancies available within Defendant district at the time the Board ordered Plaintiff's removal from Meacham Middle School. Plaintiff was merely temporarily transferred to the Transportation Department pending an opening in the teaching field in which Plaintiff was qualified to teach or until the end of the 1983–84 school year. Plaintiff was notified of his new temporary assignment to the Transportation Department. Further, Plaintiff was provided the opportunity to contest or grieve his temporary assignment with the Superintendent of Schools. Plaintiff failed to request any further hearing or appeals after he and his representative discussed his reassignment with the Superintendent of Schools. Plaintiff suffered no loss of benefits while working in the Defendant's Transportation Department.

On or about March 21, 1984, Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging discriminatory acts by the Defendant School District. In response to Plaintiff's complaint, the E.E.O.C. issued a determination notice which found that "there is not reasonable cause to believe that the charge is true." Plaintiff presented his complaints regarding his temporary reassignment to the Transportation Department to the Commissioner of Education. The Commissioner found (see Defendant's Exhibit 34) the following:

23. The contract between the parties provides for reassignment of the teacher.

24. Petitioner was transferred, pursuant to the Board's order made on March 8, 1984, to Respondent's Transportation Department. He had no teaching assignment and no student related responsibilities.

25. Petitioner was transferred to the Transportation Department because there were no teaching vacancies available within the district when the transfer was ordered.

26. Petitioner's transfer was temporary and was effective only until the end of the 1983–84 school year.

On August 27, 1984, Plaintiff was assigned a classroom teaching position teaching sixth grade science at Handley Middle School for the 1984–85 school year. On August 28, 1984, Plaintiff notified Dr. T.C. Wallace, Assistant Superintendent of Personnel, Fort Worth ISD, that he was not a science teacher and that he was being placed in an area where he had little knowledge or expertise. Based upon the Plaintiff's education and background, he was eligible to teach science. In early November 1984, Defendant FWISD provided assistance to Plaintiff through the principal of Handley Middle School, Science resource teachers, including Dr. Ruth Amon, and through the Director of Secondary Science for the school district, Dr. Sarah Jones. On January 5, 1985, Plaintiff requested a team evaluation. This request was granted.

Defendant School District has several programs to aid teachers. Among them are the Teacher's Assistance Program and a Team Evaluation Program. The Team Evaluation Program equals or exceeds the assistance given to Plaintiff under the Teacher's Assistance Program. Ample assistance was given to Petitioner to help him improve his performance; however, Plaintiff did not significantly improve as a result of the assistance given. The Defendant School District received numerous complaints from parents concerning Plaintiff's teaching performance. Plaintiff had taught Science courses on numerous occasions in his teaching career. He taught Science during the 1981–82 school years.

Plaintiff is certified by the State Board of Education and has a professional elementary and professional high school certification. Pursuant to Texas education guidelines, Plaintiff's certification, in conjunction with the successful completion of a required number of college level science courses, qualified the Plaintiff to teach elementary or high school science. Plaintiff's teaching performance was deficient in the following areas:

a. Failure to obtain the essential elements to be taught and failure to teach the essential elements.

b. Failure to form long and short range plans.

c. Demonstrated little or no motivation of students and poor communication.

d. Delays in returning graded assignments to students.

e. Unwillingness to acknowledge teaching deficiencies with no concern for improvement.

f. A poor attitude about job assignment and disrespect to supervisors.

g. Non-existent or poorly done lesson plans.

h. Uncooperative in dealing with parents of students and staff.

i. Poor teaching techniques and poor use of teaching aids, and poor use of exams to measure teaching effectiveness.

On January 24, 1985, the team of evaluators, including Dr. Sarah Jones, Mr. Richard Wilson Director of Middle Schools, and Don Ponder, Principal, conducted their formative evaluation of Plaintiff. Dr. Sarah Jones, a black female, is the Program Director of Science for the Defendant School District. She holds a doctorate degree in Chemistry and has been employed by the School District for 36 years. After the evaluation, the three (3) evaluators met with Plaintiff to discuss their finding. On February 28, 1985, the evaluators presented their evaluation to Plaintiff. The final recommendation of the team of evaluators was: "At the present time we do not recommend continued employment." On March 27, 1985, Plaintiff was notified of the Board's proposed intent to terminate his employment with the district effective at the end of the 1984–85 school year. The notice set out ten grounds for proposed termination and informed Plaintiff of the specific school district policies which were violated. It stated such violations constituted lawful discharge under Sections 13.-109 and 13.110 of the Texas Education Code. Plaintiff was further notified that he may contest the proposed action by requesting a hearing. On April 5, 1985, Plaintiff notified the Board of his desire to contest the termination and informed the Board the name of his counsel who would represent him at the hearing. On April 16, 1985, Plaintiff's counsel, Elena Cablao was informed that the Board planned to hear Mr. Dooley's contest to the proposed termination of his contract of employment on Tuesday, April 30, 1985. On April 30, 1985, all parties were informed by the Board that the hearing would take place on May 2, 1985, due to conflict of hearings on April 30, 1985.

On May 2, 1985, Plaintiff and his counsel, together with the administration and their representative, presented witnesses and documents for the school board's consideration. Later, after hearing the evidence and testimony presented by both sides, the Board voted five (5) in favor, one (1) against to terminate Plaintiff's contract with the district effective the last day of school for the 1984–85 school year. Plaintiff was present when that decision was announced. On May 8, 1985, written notification of the Board's decision to terminate Plaintiff's contract was delivered to him, notifying him of his right to appeal to the Commissioner of Education. Plaintiff appealed to the Commissioner of Education. On January 9, 1986, a hearing was held before a Hearing Officer appointed by the State Education Commissioner. On January 19, 1987, the Commissioner of Education denied Plaintiff's appeal in all things. On October 25, 1985, Plaintiff filed Civil Action 4–85–725–E against Defendant, Fort Worth Independent School District, and H. Richard O'Neal, Individually and as President of the Fort Worth School Board.

Lastly, Plaintiff has not passed the Texas Examination of Current Administrators and Teachers (TECAT). Therefore, he does not presently possess a valid current teacher or administrators certificate.

## I. Claims Arising Under the United States Constitution

### A. The Property Claim

Dooley contends that his temporary reassignment to the Transportation Department constituted a deprivation of property without due process of law. Essential to the success of Dooley's federal constitutional claim is the establishment of a property interest in his teaching duties. Dooley's Amended Proposed Findings of Fact and Conclusions of Law states that "Plaintiff, as a coach, was hired as a teacher and may not be assigned to other *non-teaching* duties...." Dooley cites *Grounds v. Tolar Independent School District*, 694 S.W. 2d 241 (Tex.App.—Fort Worth 1985), *rev'd on other grounds*, 707 S.W.2d 889 (Tex. 1986), and *Jett v. Dallas Independent School District*, 798 F.2d 748 (5th Cir. 1986), for the proposition that such a reassignment deprived him of an acquired property interest in his coaching and teaching responsibilities.

The citation of *Grounds* and *Jett* cases for this proposition—if not purposefully calculated to mislead—is at best tenuous. Dooley is quite correct in asserting that his constitutional claim depends upon the existence of a property right. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed. 2d 494 (1985). But the *Grounds* and *Jett* decisions do not establish a property interest in a school teacher's assigned duties absent a specific contractual provision to that effect. In *Jett*, the Fifth Circuit Court of Appeals held that neither

> Jett's written contract nor his oral contract with the [school district] gave Jett a property interest in his coaching duties. Therefore, although he may have had a property interest in his *coaching salary* for the 1982–1983 school year, he did not have such an interest in the continuation

of his coaching responsibilities throughout that year.

*Jett*, 798 F.2d at 754 (emphasis added). Similarly in *Grounds*, the Fort Worth Court of Appeals held that "coaches are hired as teachers and may be assigned to other teaching duties at the discretion of the school district unless the coach's contract specifically limits the duties to which he may be assigned." *Grounds*, 694 S.W. 2d at 245.

Dooley's contract, in the case at bar, contains no provision limiting the school district's right to modify a teacher's duties. To the contrary, Dooley's contract specifically provides that "the Superintendent of Schools shall have the right to assign such duties to the Teacher as the Board shall deem proper, and may, from time to time, assign *or reassign the Teacher to duties other than* or additional to those contemplated" by the agreement. (Emphasis added).

■ On its face, Dooley's employment contract states that Dooley could be assigned to duties other than teaching or coaching. Accordingly, the Court finds that Dooley has failed to establish a loss of property interest in regard to his temporary reassignment to the Transportation Department. Dooley's only property interest arising under his employment contract was his salary for the contractual year. In 1984, the year in which Dooley was temporarily reassigned pending an available teaching position, he received full payment as a teacher while working in the Transportation Department. Thus, Dooley was not deprived, without due process of law, of the only property interest arising under his contract.

### B. The Liberty Interest

■ Even if Dooley was entitled to due process in connection with his reassignment from coaching, the record in this cause firmly establishes that he was accorded due process in accordance with the Fourteenth Amendment. Dooley—when he was relieved of his coaching responsibilities, when he was temporarily reassigned to the Transportation Department, and

when he was ultimately positioned as a secondary science teacher—was afforded the advantage of every procedural safeguard. Dooley was given notice of the Superintendent's intent to relieve him of his coaching responsibilities and was permitted to request an administrative hearing regarding the Superintendent's proposed action. The evidence in this case indicates the hearing was eminently fair and impartial. Dooley proceeded to fully exhaust his right to appeal. He contested the administrative panel's decision to relieve him of his coaching responsibilities by appealing to the Board of Education, then to the Commissioner of Education, and finally to the 167th Judicial District Court of Travis County, Texas.

Dooley was likewise invited to contest his temporary assignment to the Transportation Department. He did not accept the invitation. When a suitable teaching position became available, the School District assigned Dooley to a teaching position and assisted him in improving his secondary science teaching skills. At Dooley's request, the School District provided him with a team evaluation of his teaching capabilities. When the evaluation team found Dooley's performance severely lacking in several respects, Dooley was given notice of the evaluators' recommendation that his employment be discontinued at the end of the 1984–85 school year. Again, Dooley was given notice of his right to request a hearing before the School Board to contest this recommendation. Dooley requested a hearing, and the evidence presented at trial indicates that he received a full and fair opportunity to be heard before the School Board. Dooley appealed the School Board's decision to terminate his employment, and their decision was upheld on appeal by the State Education Commissioner.

The record before the Court is devoid of a procedural infraction in regard to Dooley's: (1) removal from coaching responsibilities, (2) temporary transfer to the Transportation Department, (3) reassignment to teaching secondary science, and (4) ultimate termination. Dooley was allowed every procedural safeguard that any other teacher similarly situated would have received. Thus, even assuming *arguendo* that Dooley had a property interest in the matters listed above, there is no evidence contained in this record that Dooley's rights under the Due Process Clause of the Fourteenth Amendment were violated in any respect.

### C. Section 1983 Claims

Section 1983 of title 42 of the United States Code does not create or secure any substantive rights in itself, but merely authorizes a cause of action when rights secured by another source have been infringed. *Garcia v. Wilson,* 731 F.2d 640, 650 (10th Cir.1984) *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Since this Court finds no evidence to support Dooley's allegations that his rights under the Due Process Clause have been violated, it cannot sustain Dooley's claims under section 1983 as a matter of law. Absent a violation of constitutional rights, section 1983 provides no independent basis for recovery or injunctive relief.

### II. *Dooley's Claims Arising Under Title VII of the Civil Rights Act of 1964*

#### A. Disparate Treatment

Dooley alleges that his removal from his coaching responsibilities by the Defendant School District was a discriminatory disciplinary action, imposed upon Dooley solely because of his race, and was thus unlawful pursuant to section 2000e–2 of title 42 of the United States Code. Dooley contends that white teachers similarly situated would have been treated differently.

The United States Supreme Court in the *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), set forth the requirements of the plaintiff's prima facie case in a "disparate treatment" suit. The Court stated:

> The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that [he] was qualified, but was rejected under circum-

stances which give rise to an inference of unlawful discrimination. The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. As the Court explained in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577 [98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957] (1978), the prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors'.

*Id.* at 253–54, 101 S.Ct. at 1093–94 (citations omitted).

■ Even assuming *arguendo* that Dooley has made out a prima facie case of disparate treatment, admittedly not an "onerous' burden, the School District has successfully met its burden of articulating a legitimate, nondiscriminatory reason for Dooley's transfer to the Transportation Department. *Id.* at 253, 101 S.Ct. at 1093. Dooley was reassigned due to his misconduct in tackling an eighth grade student football player who failed to perform as desired by Dooley. Likewise, Dooley has failed to meet his burden of proving by a preponderance of the evidence that the reasons offered by the School District for his reassignment were false, or a mere pretext for discrimination.

**B. Retaliatory Conduct**

■ Dooley further alleges that his assignment to teach secondary science was racially motivated and was in retaliation for Dooley's filing of charges of race discrimination. Such allegations, if true, constitute a violation of section 2000e–3 of title 42 of the United States Code. In order to make a prima facie case of retaliation, Dooley must prove: (1) that he was engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that there was a causal link between participation in the protected activity and the adverse employment decision. *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983).

■ Dooley did engage in a protected activity when he filed this lawsuit after the Commissioner of Education denied Dooley's appeal of the School Board's decision to remove him from his coaching responsibilities. There is not a scintilla of evidence, however, which indicates that filing of Dooley's action had any bearing on the decision of the School District to assign Dooley to the position of teaching sixth grade science. Dooley was a properly certified elementary and high school teacher, who had taught science on numerous other occasions. Dooley had been properly relieved of his coaching responsibilities and temporarily assigned to the Transportation Department. The School District reassigned Dooley to teaching duties at the first available opportunity: namely, the beginning of the 1984–85 term.

While Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 provide separate and independent remedies for racial discrimination in employment, both laws require an intentional discriminatory act as a predicate to liability. *Crawford v. Western Electric Co.,* 614 F.2d 1300, 1315 (5th Cir. 1980). Since this Court finds that the record is devoid of any probative evidence of discriminatory intent on the part of the School District when reassigning Dooley to teach secondary science, Dooley's section 1981 claim cannot be sustained.

**III. *Conclusion***

In sum, Dooley has failed to prove, by a preponderance of the evidence, that his rights under the Due Process Clause of the United States Constitution were violated. Dooley has also failed to make out a prima facie case for race discrimination, disparate treatment, or retaliatory action under Title VII of the Civil Rights Act of 1964. Such failure likewise precludes recovery on Dooley's section 1983 and 1981 claims. Accordingly, Dooley's request for relief under the Constitution, Title VII, and sections 1983 and 1981 is DENIED.