**Affirmed and Opinion Filed June 7, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00799-CV

**SIMON FASS, Appellant**

**V.**

**RICHARD C. BENSON, INDIVIDUALLY AND ACTING IN HIS OFFICIAL CAPACITY, INGA H. MUSSELMAN, INDIVIDUALLY AND ACTING IN HER OFFICIAL CAPACITY AND JENNIFER HOLMES, INDIVIDUALLY AND ACTING IN HER OFFICIAL CAPACITY, Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-05277**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Kennedy
Opinion by Justice Nowell

Appellant Simon Fass, a tenured professor at the University of Texas at Dallas (UTD), sued appellees, who are UTD administrators, for violating his Texas constitutional rights to academic freedom, procedural due process, and substantive due process. Appellees filed a plea to the jurisdiction raising sovereign immunity and other jurisdictional issues. The trial court granted the plea to the jurisdiction and dismissed the case. In four issues, Professor Fass argues his due process and

academic freedom claims are viable, and his claims are not moot. We affirm the trial court's order granting appellees' plea to the jurisdiction and dismissing the case.

## Background

Professor Fass is a tenured professor of public policy and affairs at UTD. For the past thirty years, he has taught a wide range of graduate and undergraduate courses. Since 1988, he has regularly taught statistics courses for the School of Economics, Political, and Policy Sciences (EPPS). As a tenured professor, he is required to teach three classes in both the fall and spring semesters. In spring 2019, he taught two sections of EPPS 2302, a core statistics class required for EPPS students.

In late March 2019, Dean Jennifer Holmes, who served as Head of UTD's School of EPPS, informed Professor Fass he would receive a classroom "peer evaluation" outside of his usual scheduled evaluations. A non-tenured instructor who had not taught undergraduate statistics since 2004 observed Professor Fass's evening class. The next day, Dean Holmes told Professor Fass the evaluator was "very critical" of his teaching. She also told him several of his students from his morning section complained about his class. This was the first time Professor Fass heard about any student complaints. Dean Holmes also discussed with him her concerns about the rate of withdrawals, failures, and drops (WFDs) in his class. UTD administrators had never stated WFDs were relevant to a professor's teaching method and never included them as a metric in performance evaluations.

After the evaluation, Dean Holmes told Professor Fass to alter his approach to student grading by eliminating any further quizzes and relying solely on homework assignments. Professor Fass disagreed with the new approach but sent an alternate proposal. Dean Holmes rejected it. Thereafter, Dean Holmes removed Professor Fass from teaching his two EPPS 2302 statistics classes and replaced him with a PhD graduate student for the rest of the semester.

Professor Fass alleged that "by giving the complaints of students greater weight than the academic freedom of a tenured profession, [Dean Holmes] upended the academic order." He argued his teaching methods were specifically protected by UT System Rule 31004. He also argued UTD violated UT System Rule 31102, which required a professor whose teaching methods were found deficient to be given support in a specified manner. Removal from the classroom was outside the permissible manner of support.

After Dean Holmes removed Professor Fass from teaching, he complained to Inga Musselman, UTD's Provost, but Provost Musselman affirmed Dean Holmes's actions. Professor Fass alleged Provost Musselman sidestepped her responsibilities thereby continuing to deprive him of his academic freedom and violating his due process rights.

Professor Fass next pursued his rights before a UTD grievance panel. The panel convened on October 14, 2019, and ultimately declined to overturn Dean

Holmes's decision. President Richard Benson upheld the grievance panel's decision.

In spring 2020, two of the four classes assigned to Professor Fass failed to draw enough registered students to "make," leaving him short of his six-course requirement as a tenured professor. Professor Fass proposed several possible non-classroom assignments to fulfill his requirements, but Dean Holmes only accepted one of them. Professor Fass refused a second assignment because he considered it a "meaningless task." Professor Fass was then forced to forfeit ten percent of his annual salary because he could not fulfill his two other course requirements.

Professor Fass filed an original petition alleging the following causes of action: (1) "Violation of the Texas Constitution by Benson, Musselman, and Holmes, in their official capacities–deprivation of academic freedom and violation of Article I, Section 8"; (2) "Violation of the Texas Constitution by Benson, Musselman, and Holmes, in their official capacities–deprivation of property interest without procedural due process in violation of Article I, Section 19; and (3) deprivation of substantive due process through the arbitrary, capricious, unreasonable, and/or irrational actions taken against him.

He sought injunctive and declaratory relief preventing future interference in his classroom methods and barring the deduction of any of his salary. He specifically sought a declaration barring UTD and its administrators from "arbitrary removal of

–4–

professors from their classrooms based on contested student complaints and mere days after a single negative classroom observation."

Professor Fass pleaded that "Defendants' conduct deprived [him] of his constitutional rights to free speech and academic freedom, as well as denying him the due process required for deprivation of his property interest in his teaching salary." He alleged Dean Holmes's actions stripped him of his eligibility to teach core statistics and research method classes required of all undergraduate EPPS students, which resulted in a shortfall in his teaching loads for both fall 2019 and spring 2020.

Appellees filed an original answer and subsequent plea to the jurisdiction asserting sovereign immunity. They argued, among other defenses, that any academic or disciplinary decisions were made for legitimate pedagogical reasons. They further asserted the following:

- Dean Holmes's actions were not ultra vires because she made a discretionary decision within her lawful authority regarding faculty.

- Professor Fass's academic freedom claim was not viable because his speech was not protected under the First Amendment, and the alleged violation was not content-based.

- Professor Fass's procedural due process claim was not viable because he did not have a protected interest in a particular teaching assignment, and he received all the process that was due.

- Professor Fass's substantive due process claim was not viable because he did not have a protected interest and even if he did, appellees' actions were not arbitrary. Instead, their decisions "are the academic decisions of university officials who carefully considered the best interests of UTD and

–5–

its students, and [the trial court] should not substitute its judgment for that of [appellees]."

Professor Fass filed a first amended original petition and deleted his claims for monetary relief under the Texas Constitution, his claims against UTD, and his claims for equitable relief against President Benson, Provost Musselman, and Dean Holmes in their individual capacities. Professor Fass then filed his response to the plea to the jurisdiction emphasizing the facts establishing the trial court's jurisdiction as to his remaining claims against the UTD administrators, acting in their official capacities, because of ultra vires actions violating his constitutional rights and denying his academic freedom without due course of law.

Appellees filed a reply, and the trial court subsequently held a hearing. On August 17, 2021, the trial court granted appellees' plea to the jurisdiction without stating the basis for its ruling and dismissed the case with prejudice. This appeal followed.

## Standard of Review

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, the court must determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id*. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the

jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227. Whether sovereign immunity defeats a trial court's subject-matter jurisdiction is a question of law reviewed de novo. *Id*.; *see also Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904–05 (Tex. 2021).

As part of a state educational institution, UTD and its employees acting in their official capacities have sovereign immunity from suit. *Villarreal*, 620 S.W.3d at 904–05. However, an exception to sovereign immunity is the ultra vires doctrine. To fall within the ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *See Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).[1] Thus, ultra vires suits do not seek to alter government policy, but rather to enforce existing policy. *Heinrich*, 284 S.W.3d at 372. If a plaintiff has not actually alleged such an action, the claims remain jurisdictionally barred. *Hall*, 508 S.W.3d at 240–41 (holding the official capacity defendant acted within legal discretion and therefore was entitled to sovereign

---

[1] Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they are distinct concepts. The common law doctrine of sovereign immunity protects the state and its various agencies, boards, and universities. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 n.3 (Tex. 2003). The common law doctrine of governmental immunity protects political subdivisions of the state, such as counties and municipalities. *Id.* The differences in the doctrine are not material to the issues presented here. We further note the Texas Supreme Court relied on governmental immunity cases in considering the ultra vires issue in *Hall*, which was a sovereign immunity case involving a regent with The University of Texas System and the University of Texas System's Chancellor. *See Hall*, 508 S.W.3d at 238.

immunity). Merely asserting legal conclusions or labeling a defendant's actions as "ultra vires," "illegal," or "unconstitutional" does not suffice to plead an ultra vires claim—what matters is whether the *facts* alleged constitute actions beyond the governmental actor's statutory authority, properly construed. *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.).

The Supreme Court of Texas recently clarified what it means for an official to act "without legal authority." *Hall*, 508 S.W.3d at 238. The court stated, "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id*. "Ministerial acts," on the other hand, are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id*. (citing *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994))). The basic justification for this ultra vires exception to sovereign immunity is that ultra vires acts—or those acts without authority—should not be considered acts of the state at all. *Id*.

### Discussion

Because this case was decided on the pleadings, our focus is on whether Professor Fass's first amended petition stated viable claims under the Texas Constitution to overcome sovereign immunity. When a plea to the jurisdiction

–8–

asserts several grounds and the trial court does not specify on which ground the plea is granted, an appellant must show that each independent ground is insufficient to support the order. *See Gentry v. Smith*, No. 05-18-01181-CV, 2019 WL 4033947, at *4 (Tex. App.—Dallas Aug. 27, 2019, pet. denied) (mem. op.). We address each of Professor Fass's arguments in turn.

### A. *Academic Freedom*

Professor Fass contends his academic freedom includes his freedom to teach without interference and "undeniably" protects an individual professor's classroom method from the arbitrary interference of university officials. Appellees respond the Texas Constitution does not protect speech made by public employees while exercising their official duties, and even if such a right exists under Texas law, appellees did not violate Professor Fass's right to academic freedom under the facts of this case.

The Texas Constitution provides: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8. Both parties agree we may rely upon persuasive authorities applying free-speech protections under both the federal and Texas constitutions. *See Caleb v. Carranza*, 518 S.W.3d 537, 543 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Davenport v. Garcia*, 834 S.W.2d 4, 40 (Tex. 1992) (Hecht, J., concurring) ("When state and federal provisions overlap or

–9–

correspond, state law, as well as federal law and the law of other states, may be helpful in analyzing their proper application.").

When interpreting the Texas Constitution, courts have held that public employees must establish they spoke as citizens, rather than as employees pursuant to their official duties. *See Caleb*, 518 S.W.3d at 544. Although the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern, not all speech by public employees is constitutionally protected. *Id*. (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). When public employees make statements pursuant to their official duties, the employees are not speaking as a citizen for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Id*.

Here, Professor Fass's academic freedom claim concerns activities taken pursuant to his official duties as a professor. Based on complaints from students and an in-person observation of his class, "Holmes insisted that Professor Fass must abandon his syllabus and alter his approach to student evaluation, eliminating any further quizzes and switching to only homework assignments." At Dean Holmes's request, Professor Fass provided alternative grading options, but she rejected them. These claims relate to actions in his official duties as a professor; therefore, they are not protected under the First Amendment unless they involve issues of public concern. *See id*.

The Supreme Court has established that academic freedom is "a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019) (quoting *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)). However, even this protection has limits, and whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Id.* at 853. Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community. *Id.*

Professor Fass argues his right to academic freedom was violated as set forth in the American Association of University Professors' 1940 Statement of Principles on Academic Freedom, which is located on Provost Musselman's homepage. According to his amended petition, the 1940 Statement provides, "The University of Texas at Dallas recognizes academic freedom as the freedom to conduct the fundamental activities of a community of scholars and students without interference: to learn and to teach." Professor Fass did not plead factual allegations of how requiring him to change his evaluation of student performance from quizzes to homework interfered with his ability to *teach* or the students' ability to *learn*. Moreover, he did not plead any facts that his evaluation method of students involves an issue of social, political, or other interest to the community. "The linchpin of the inquiry is, thus, for both public concern and academic freedom, the extent to which

the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives." *Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021). A dispute between a professor and a dean regarding quizzes versus homework assignments is not a matter of public concern under these pleaded facts.

In reaching this conclusion, we recognize a professor's freedom of expression is paramount in the academic setting. However, Professor Fass has not pleaded any facts indicating Dean Holmes or the other appellees censored, or sought to regulate in any way, the content of his quizzes or homework assignments. A dispute that is purely private, "such as a dispute over one employee's job performance," enjoys no First Amendment protection as to that speech. *See Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 550 (Tex. App.—Dallas 1997, pet. denied); *see also Day v. S. Park Indep. Sch. Dist.*, 768 F.2d 696, 700 (5th Cir.1985) (concluding teacher's dispute with principal concerning negative performance evaluation was purely private matter), *cert. denied*, 106 474 U.S. 1101 (1986). We conclude Professor Fass's academic freedom claim is without merit. To the extent the trial court granted the plea to the jurisdiction on this basis, the trial court did not err.

Professor Fass also failed to plead facts establishing the ultra vires exception. He has not pleaded facts establishing a ministerial duty "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Emmett*, 459 S.W.3d at 587 (defining a ministerial duty). To the contrary, Professor Fass's factual allegations

–12–

challenging his academic freedom are complaints about actions within Dean Holmes's discretion. *See Henrich*, 284 S.W.3d at 372. And, labeling the actions "unconstitutional" is not enough. *Sunset Transp., Inc.*, 357 S.W.3d at 702. To the extent the trial court granted the plea to the jurisdiction on this basis, the trial court did not err.

### B.    *Procedural Due Process*

Professor Fass next argues appellees denied him procedural due process by failing to abide by UTD's policies and procedures in handling his complaint against Dean Holmes and that such actions deprived him of his protected property interest in his tenure and employment contract (citing article I, section 19 of the Texas Constitution). Appellees respond that his argument is moot or alternatively, he has not established any property interest entitling him to due process.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land." TEX. CONST. art. I, § 19. Our due course clause is nearly identical to the federal due process clause. *See Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018). Because the two are so similar, "we have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Id.*; *see also Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

Before any substantive or procedural due-process rights attach, however, the citizen must have a liberty or property interest that is entitled to constitutional protection. *Honors Acad., Inc.*, 555 S.W.3d at 61. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972). To have a constitutionally protected property interest, a person must have a "legitimate claim of entitlement" rather than a mere "unilateral expectation." *Honors Acad., Inc.*, 555 S.W.3d at 61. Texas law similarly states that a "vested right" is "something more than a mere expectancy based upon an anticipated continuance of an existing law." *Id.*

Professor Fass contends UTD administrators deprived him of any meaningful due process before removing him from teaching. He specifically alleged his removal from the classroom "together with the prohibition against teaching core courses were themselves adverse employment actions" that deprived him of his "protected property interest in tenure and [his] employment contract." However, in his response to appellees' plea to the jurisdiction, Professor Fass stated, "Here, it is important to note that Plaintiff does not claim a protected interest in a particular teaching assignment, but he does claim a protected interest in being permitted to teach the classes he was assigned."

First, to the extent he has alleged a property interest in teaching classes he was assigned in 2019, any such claim is moot as the classes have ended. But more

–14–

importantly, courts have held a professor "has no property interest in his teaching assignment, or in teaching classes at all," absent a contractual provision limiting a university's right to reassign professors. *See, e.g.*, *Wagner v. Tex. A&M Univ.*, 939 F. Supp. 1297, 1312 (S.D. Tex. 1996); *Dooley v. Fort Worth Indep. Sch. Dist.*, 686 F. Supp. 1194, 1199 (N.D. Tex. 1987), *aff'd*, 866 F.2d 1418 (5th Cir. 1989), *cert denied*, 490 U.S. 1107 (1989); *see also McCartney v. May*, 50 S.W.3d 599, 609 (Tex. App.—Amarillo 2001, no pet.). Professor Fass has not pleaded any contractual provision limiting Dean Holmes's right to assign or reassign his classes. To the contrary, he conceded in his response that "Dean Holmes has the authority to assign classes in the school, and that he has no entitlement to teach any specific courses in the future."

Despite this concession, Professor Fass asserts he has a property interest in the UT System's procedures and rules regarding grievances for addressing deficient teaching methods. We disagree. A state agency's failure to follow its own procedural rules governing employment will not create a property interest which otherwise does not exist. *Alford v. City of Dallas*, 738 S.W.2d 312, 316 (Tex. App.—Dallas 1987, no writ). An individual does not have a property interest in the rules themselves or in his state employer's observance of the rules. *Id.* "Rather, a property interest protected by procedural due process arises where an individual has a legitimate claim of entitlement that is *created, supported, or secured by* rules or mutually explicit understandings." *Id.* Thus, a state employer's rules or procedures

governing employment merely evidence a property right, and to have a procedural due process cause of action, the plaintiff must establish a protectable property interest separate and apart from the rules themselves. *Id.* Procedural rights that protect due process cannot be used to "bootstrap" an employee into having a property interest entitlement. *See San Benito Consol. Indep. Sch. Dis. v. Leal*, No. 13-20-00569-CV, 2022 WL 243725, at \*8 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2022, no pet.) (mem. op.) (citing *Cote v. Rivera*, 894 S.W.2d 536, 541 (Tex. App.—Austin 1995, no writ) (quoting *Evans v. City of Dallas*, 861 F.2d 846, 849 (5th Cir. 1988)).

Professor Fass has not alleged a property interest, but instead alleged his contract required him to abide by UT System's policies and rules, and appellees violated those rules. But requiring Professor Fass to follow UT System's rules does not make them his property and will not establish a protectable property interest separate and apart from the rules themselves. Therefore, we conclude Professor Fass's pleadings do not establish he has a property interest protected by the due process clause of the Texas Constitution. To the extent the trial court granted appellees' plea to the jurisdiction on this basis, the trial court did not err. Having reached this conclusion, we need not address whether the October 14, 2019 grievance proceeding satisfied procedural due process. *See* TEX. R. AP. P. 47.1.

### C. Substantive Due Process

Professor Fass argues his substantive due process rights were violated because Dean Holmes's actions were a complete departure from academic norms. Appellees respond a tenured professor has no substantive due process right to continuing employment.

Professor Fass relies on the general proposition that "in evaluating a substantive due process claim based on allegedly arbitrary state action, a judge may not override a faculty's professional judgment in academic matters unless 'it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 684 (Tex. App.—Amarillo Nov. 4, 1998, pet. denied) (quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)). This argument, however, presupposes Professor Fass has a substantive due process claim. We must first determine if such a fundamental claim exists.

Not every property right is entitled to the protection of substantive due process. *See Villarreal*, 620 S.W.3d at 909. "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution," and "[t]he history of substantive due process counsels caution and restraint" in recognizing such rights. *Id.* (quoting *Ewing*, 474 U.S. at 229 (Powell, J., concurring)). In *Villarreal*, the supreme court held the Texas Constitution does

not recognize higher education as a fundamental right and, therefore, does not fall within any substantive protection provided by the due course of law. *Id.*

Further, in *County of Dallas v. Wiland*, the Texas Supreme Court agreed with the Third Circuit's reasoning that there is no substantive due process right under the Fourteenth Amendment to the continued employment of a tenured professor. 216 S.W.3d 344, 361 (Tex. 2007) (citing *Nicholas v. Penn. State Univ*., 227 F.3d 133, 142 (3rd. Cir. 2000)). The supreme court emphasized the following language from *Nicholas*:

> [T]enured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution. . . . "[I]t cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions." Nor does public employment approach the interests "'implicit in the concept of ordered liberty like personal choice in matters of marriage and family.'" Accordingly, we view public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process.

*Id*. at 360 (quoting *Nicholas*, 227 F.3d at 143). Because there is no substantive due process right to tenured employment at a public university, there is likewise no constitutionally-protected right for a tenured professor to teach courses in a specific manner. Stated differently, as applied here, because there is no fundamental interest in tenured employment, there is no such interest in Professor Fass's classes or teaching methods in the course of his public employment as a tenured UTD professor. Accordingly, any governmental action was "entirely outside the ambit of substantive process and will be upheld so long as the state satisfied the requirements

of procedural due process." *Id*. As explained above, Professor Fass failed to establish a property interest entitled to procedural due process.

Even assuming Professor Fass established a protected interest, cases dealing with abusive executive action have repeatedly emphasized "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense'" and rise to a level of "abuse of power as that which shocks the conscience." *Id*. at 361–62 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998)). Professor Fass's pleadings indicate Dean Holmes made decisions based on student complaints about his class and a "very critical" classroom evaluation. She also considered the number of WFDs. She allowed Professor Fass the opportunity to address her concerns, but she determined his proposal was unsatisfactory. Ultimately, her decision was upheld after a grievance hearing. Viewing the pleadings in the light most favorable to Professor Fass, any actions against him do not "remotely approach the conscience-shocking required for a substantive due process violation." *Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 266 (Tex. 2018).

### D. Declaratory and Injunctive Relief

Finally, Professor Fass requested certain injunctive and declaratory relief to prevent future denials of rights to himself and others at UTD. Appellees respond he seeks overbroad and improper relief and lacks standing to seek such relief.

Standing is a constitutional prerequisite to suit. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). The Texas standing doctrine requires a concrete

–19–

injury to the plaintiff, and a real controversy between the parties the court can resolve. *Id.* at 154.

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties, and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). In order "[t]o constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020).

However, the Uniform Declaratory Judgment Act does not create jurisdiction, but instead is merely a procedural vehicle for resolving issues related to claims already within the court's jurisdiction. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011). "A litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Tex. Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 258 (Tex. App.—Austin 2016), *aff'd*, *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018). Stated in terms applicable here, to the extent Professor Fass's claims suffer from sovereign-immunity defects, he cannot avoid those problems merely by seeking declaratory judgment. *Id*. (explaining UDJA does not waive immunity when asserted constitutional claims are not viable as a matter of law).

As explained above, Professor Fass cannot establish jurisdiction over his claims; therefore, he cannot establish his request for declaratory relief. *Goodwin v. Hohl*, No. 03-20-00433-CV, 2021 WL 6129001, at *4 (Tex. App.—Austin Dec. 29, 2021, no pet.) (mem. op.). Therefore, the trial court did not err by denying his requested relief. For similar reasons, he cannot establish the trial court's jurisdiction over his request for injunctive relief. *Id.*; *see also Gates v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00631-CV, 2016 WL 3521888, at *6 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.) (concluding injunctive relief under the UDJA not available without a declaratory judgment); *State v. Anderson Courier Serv.*, 222 S.W.3d 62, 66 (Tex. App.—Austin 2005, pet. denied) (noting relief granted under section 37.011 of UDJA must be ancillary to judgment).

To the extent Professor Fass seeks injunctive relief separate from the UDJA, we likewise conclude he is not entitled to such relief because he cannot satisfy the redressability component of standing. Because injunctive relief "cannot conceivably remedy any past wrong," Professor Fass could satisfy this requirement only by demonstrating a "continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019). The threatened future injury must be (1) potentially suffered by the plaintiff, not someone else, (2) "concrete and particularized," not abstract, and (3) "actual or imminent, not conjectural or hypothetical." *Id*. To satisfy the imminence requirement, there must be at least a "substantial risk" that the injury will occur. *Id*.

Professor Fass sought injunctive relief requiring appellees to refrain from future interference with classroom methods, to give him the due process he was denied, and to require mandatory training for faculty and those administrators supervising faculty to prevent "ultra vires actions to limit classroom authority without adherence to UT System rules."

First, Professor Fass has not shown a substantial risk that appellees will assign him to teach a class and then again interfere with his teaching methods; however, even if this occurred, he has admitted he has no right to teach a particular class. Thus, the threatened future injury is abstract and hypothetical. *See id.* Next, Professor Fass has not established he was denied due process; therefore, the trial court acted within its discretion by denying such injunctive relief. *See Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (decision whether to grant injunctive relief is within the sound discretion of the trial court). Finally, we have concluded appellees did not engage in any ultra vires actions, and Professor Fass has cited no legal authority supporting a trial court's ability to enter an injunction requiring mandatory training for college administrators when, as here, there has been no academic freedom violation and he has failed to show any "substantial risk" any injury/violation will occur again. *Stringer*, 942 F.3d at 721. Accordingly, the trial court did not abuse its discretion by denying Professor Fass's request for injunctive relief. *See Jordan*, 89 S.W.3d at 742.

**Conclusion**

In this suit, we are simply tasked with assessing whether appellees exceeded their authority in their UTD administrative roles. On this record, we conclude they did not. Having overruled each of Professor Fass's arguments, we conclude the trial court properly granted appellees' plea to the jurisdiction. We affirm the trial court's order granting appellees' plea to the jurisdiction and dismissing the case.

/Erin A. Nowell//

210799f.p05

ERIN A. NOWELL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

SIMON FASS, Appellant

No. 05-21-00799-CV          V.

RICHARD C. BENSON,
INDIVIDUALLY AND ACTING IN
HIS OFFICIAL CAPACITY, INGA
H. MUSSELMAN,
INDIVIDUALLY AND ACTING IN
HER OFFICIAL CAPACITY   AND
JENNIFER HOLMES,
INDIVIDUALLY AND ACTING IN
HER OFFICIAL CAPACITY,
Appellees

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-20-05277.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Kennedy participating.

In accordance with this Court's opinion of this date, the trial court's August 17, 2021 order granting appellees' plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellees RICHARD C. BENSON, INDIVIDUALLY AND ACTING IN HIS OFFICIAL CAPACITY, INGA H. MUSSELMAN, INDIVIDUALLY AND ACTING IN HER OFFICIAL CAPACITY   AND JENNIFER HOLMES, INDIVIDUALLY AND ACTING IN HER OFFICIAL CAPACITY recover their costs of this appeal from appellant SIMON FASS.

Judgment entered this 7th day of June, 2023.